**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

D. SCOTT PERRY; COLD WATER                                                                          PLAINTIFFS
DISTRIBUTING LLC, an Arkansas Limited
Liability Company; and BEST ICE LLC, an
Arkansas Limited Liability Company

v.                                            No. 4:08CV00501 JLH

ICE HOUSE AMERICA LLC, a
Florida Limited Liability Company                                                                    DEFENDANT

**OPINION AND ORDER**

D. Scott Perry, Cold Water Distributing, LLC, and Best Ice LLC, brought this action against Ice House America LLC, alleging a variety of misdeeds regarding a distributorship agreement between Ice House, which manufactures and markets machinery and related items for the production, sale, and delivery of ice, and Cold Water, which became an Ice House distributor in May 2005. The allegations of misconduct include imposing unlawful charges for "Trademark License Fees," unilaterally imposing "License Termination Fees," refusing to ship ice vending machines until Perry (who is the managing member of Cold Water) personally guaranteed these fees, imposing by duress requirements for completion of sales orders beyond the terms of the distributorship agreement, and interfering with Cold Water's contractual relationships and business expectancies with its customers by contacting them directly regarding the sale of bags, questioning their customer's right to rename the Ice House logo, imposing trademark license fees, and making Cold Water a collection target for those fees. The claims for relief include a claim for declaratory judgment as to the rights and duties of the parties; a claim for breach of the distributorship agreement and the implied duty of good faith and fair dealing; tortious interference with business relationships; misrepresentation in violation of

the common law and the Arkansas Franchise Practices Act; violation of the Arkansas Deceptive Trade Practices Act; promissory estoppel; and unjust enrichment.

Paragraph 17 of the distributorship agreement provides:

> Arbitration. Disagreements between the parties regarding any of the terms of this Agreement shall be submitted to arbitration pursuant to the American Arbitration Association Rules for Commercial Arbitration. The arbitrator shall make a binding determination of the dispute between the parties. Arbitration shall be conducted in Duval County, Florida.

After the complaint was filed in this case, Ice House filed a petition to compel arbitration in the Middle District of Florida. Ice House argues that the Court should stay this action until the Middle District of Florida rules on that petition. The plaintiffs argue that this Court should determine whether arbitration may be compelled. They argue that the arbitration clause is unenforceable and that, even if it is enforceable as to Cold Water, it is not enforceable as to Perry and Best Ice. For the reasons set forth below, the Court holds that it has authority and jurisdiction to determine whether the disputes at issue are arbitrable and that this action in its entirety is stayed because the disputes of Perry and Best Ice are ancillary to the dispute between Cold Water and Ice House.

**I.**

In *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501 (8th Cir. 1999), the court held that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case as a matter of federal comity." *Id*. at 503 n.2. The purpose of the first-filed rule is to conserve judicial resources and avoid conflicting rulings between separate courts with jurisdiction over parallel litigation. *Id.* at 503.

Ice House recognizes the *Keymer* decision but argues that, under *Raytheon Company v. National Union Fire Ins. Co.*, 306 F. Supp. 2d 346 (S.D.N.Y. 2004), the first-filed rule is not

controlling in this case.  In *Raytheon*, the district court in New York refused to defer to a Massachusetts court, holding that the overriding policy interests in speedy resolution of disputes regarding arbitrability outweighed application of the first-filed rule.  *Raytheon*, 306 F. Supp. 2d at 354.  In that case, the petitioner had filed both actions, and the filing dates lacked significance because the Massachusetts filing preceded the New York filing by only two days.  *Id.*  Furthermore, in *Raytheon*, there was reason to doubt that the Massachusetts court had jurisdiction over the issue of arbitrability, so the New York court refused to defer to the Massachusetts court under a strict application of the first-filed rule.  In *Raytheon*, the court distinguished *Keymer* in part because in *Keymer* both courts had jurisdiction.  *Id.* at 354 n.48.

Here, Cold Water, Perry, and Best Ice filed the initial complaint in Arkansas, and Ice House filed its motion to compel arbitration in Florida nineteen days later.  This Court has jurisdiction over the parties and over the subject matter.  *Keymer*, not *Raytheon*, controls this action.  There is no reason for this Court to defer to the Florida court regarding arbitrability.  This Court has the authority, under *Keymer*, to determine whether the disputes at issue are arbitrable, and will do so.

**II.**

Whether parties validly entered into an arbitration agreement  and whether that agreement is enforceable are matters of state contract law.  *U.S. v. Gov't Technical Services, LLC*, No. 5:06CV00270, 2007 WL 1411616, at *2 (E.D. Ark. May 9, 2007) (citing *Faber v. Menard*, 367 F.3d 1048, 1052 (8th Cir. 2004)).  Where Arkansas is the forum state and the contract was entered into in Arkansas, Arkansas law applies to determine whether an arbitration agreement is valid.  *Casteel v. Clear Channel Broadcasting, Inc.*, 254 F. Supp. 2d 1081, 1088 (W.D. Ark. 2003).  Cold Water argues that Arkansas law should be applied to determine whether the arbitration agreement was

entered into validly. Ice House asserts that the distributorship agreement itself is controlled by Florida law, but it does not respond or object to Cold Water's arguments that Arkansas law controls the disputes in this case. Because Ice House does not object, and because the distributorship agreement was entered into within Arkansas, the Court will apply Arkansas law to determine the validity of the arbitration agreement.

Ice House argues that it entered into a valid agreement to arbitrate any dispute regarding terms of the distributorship agreement. Cold Water asserts that no such agreement was made, as the arbitration clause was "procured by fraud, it is unconscionable, there was no meeting of the minds, and the Arbitration Clause is void *ab initio*." For support, Cold Water cites *Colorall Technologies International, Inc. v. Plait*, 2005 WL 4655380 (S.D. Fla. 2005). That court, however, merely stated *in dicta* that where an arbitration clause is fraudulently induced, a federal court can determine whether the clause is valid. *Id.* at *4.[1]

The general rule is that one who signs a document is bound to know the content of that document and cannot escape the obligations imposed by it. *Enderlin v. XM Satellite Radio Holdings, Inc.*, No. 4:06CV0032, 2008 WL 830262, at *6 (E.D. Ark. Mar. 25, 2008) (citing *Banks v. Evans*, 347 Ark. 383, 391, 64 S.W.3d 746, 751 (2002)). To prove fraudulent inducement, a plaintiff must show that (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or knew that he or she did not have sufficient knowledge to make the representation; (3) the defendant intended that the plaintiff would rely on the representation; (4) the

---

[1] The Florida district court in *Colorall* also applied the first-filed rule, staying the Florida action and deferring to the California court, in which the first action had been filed. *Colorall Technologies Int'l, Inc. v. Plait*, No. 05-60401, 2005 WL 4655380, at *6 (S.D. Fla. July 15, 2005).

plaintiff justifiably relied on the representation; and (5) the plaintiff sustained damages as a result of the justifiable reliance. *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 198, 766 S.W.2d 424, 426 (1989); AMI Civil 2008, 402. With respect to contract negotiation, the misrepresentation must relate to a past event or present circumstance, not a future event. *P.A.M. Transport, Inc. v. Ark. Blue Cross and Blue Shield*, 315 Ark. 234, 240, 868 S.W.2d 33, 36 (1993). Fraudulent inducement may be maintained, however, where the promisee can prove that the promisor made a future promise that it had no intent to perform. *Undem v. First Nat'l Bank, Springdale, Ark.*, 46 Ark. App. 158, 165, 879 S.W.2d 451, 454 (1994).

The only evidence that Cold Water has presented of fraudulent inducement or absence of meeting of the minds is an affidavit of Scott Perry. Perry's affidavit says, in pertinent part, "IHA never advised me that it deemed any signature on the Distributorship Agreement to create personal arbitration obligations for me." However, Ice House has not argued that Perry's signature created personal arbitration obligations for Perry. It has argued that his claims are arbitrable because they are based on the terms of the agreement or require interpretation of the agreement. Perry has described no misrepresentation that was made that induced him to agree on behalf of Cold Water to the arbitration provision. Section 20 of the distributorship agreement states that the parties "have jointly participated in the drafting of this agreement and no ambiguity, omission or error shall be construed against any party for having drafted same." Section 24 states that the agreement and its terms and conditions "constituted the entire agreement" of the parties. Perry, signing in his capacity as an agent of Cold Water, is presumed to have known the terms to which he agreed on behalf of Cold Water when he signed the contract. The arguments purported by Cold Water do not amount to a sustainable claim for fraudulent inducement. Because Cold Water has failed to establish the

5

essential elements of fraudulent inducement or a lack of mutuality, Cold Water entered into a valid and binding arbitration agreement with Ice House.

The plaintiffs also argue that Ice House should be estopped from seeking arbitration or be deemed to have waived the arbitration clause because it filed suit against a distributor in Tennessee and has litigated in Tennessee even though the agreement with that distributor also has an arbitration clause. A party may be found to have waived its right to arbitration if it "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007) (quoting *Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)). Waiver of arbitration rights occurs if the party substantially invokes the litigation process before asserting its arbitration rights. *Id.* In this case, Ice House's litigation in Tennessee against a different distributor does not constitute an invoking of the litigation process against the distributor in the present action. Even if Ice House waived its arbitration rights by initiating litigation in Tennessee, its rights were only waived with respect to the Tennessee distributor. Ice House has not availed itself of the litigation process in Arkansas against Cold Water, and it has not delayed its request for arbitration in a manner that has resulted in prejudice to Cold Water. Therefore, Ice House is not estopped from pursuing its rights to arbitrate disputes with Cold Water.

Cold Water next asserts that its claims are outside the scope of Section 17, which it contends is very narrow in scope. Cold Water argues that the language "regarding any of the terms" limits the arbitration clause to disputes over interpretation of the contract language of the distributorship agreement. Cold Water contends that a narrow reading of Section 17 is required based on the

context of indemnification language in the contract, but Cold Water provides no case law supporting its argument that the clause in this case is narrow in scope.

Because arbitration is a matter of consent, arbitrability is governed by whether the parties intended a dispute to be subject to arbitration. *Marathon Ashland Petroleum, LLC v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 949 (8th Cir. 2002). In determining whether the parties intended a dispute to be subject to an arbitration agreement, a court must make two determinations: first, whether the clause is broad or narrow in scope; and second, if the clause is narrow, whether the dispute is collateral to the agreement containing the arbitration clause. *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997). If the court determines that the clause is broad, then the court analyzes whether the dispute relates to the subject matter of the agreement. *Id.*; *see also Local 447 of the Int'l Union of Painters and Allied Trades v. Five Seasons Paint and Drywall, Inc.*, 426 F. Supp. 2d 982, 994 (S.D. Iowa 2006). If the arbitration clause is broad, even the issue of whether the dispute relates to the agreement containing the arbitration clause is arbitrable. *Id.*

Courts have construed arbitration clauses to be broad or narrow depending on specific language in each clause. In *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, the court considered an arbitration clause to be broad where it required arbitration for disputes not only arising from the agreement, but also those "relating to" the contract. 118 F.3d at 621 (stating that "relating to" constituted the broadest language the parties could reasonably use to require arbitration of disputes, including collateral disputes related to the contract). In *Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, the Eighth Circuit reaffirmed that the *Fleet* decision "expressly relied on the additional and more general phrase '*relating to*' to find that the arbitration clause was broad."

179 F.3d 1095, 1101 (8th Cir. 1999) (holding an arbitration clause to be narrow where it contained the language "arising from" but lacked the additional language of "relating to"); *see also Marathon Ashland Petroleum*, 300 F.3d at 949 (treating an arbitration clause containing the phrase "relating to" as broad in scope). Clauses have been construed to be narrow where they explicitly limit the grievance or dispute to violations of specific articles of the agreement itself. *See United Steel Workers of Am., CIO-CLC v. Duluth Clinic, Ltd.*, 413 F.3d 786, 789-90 (8th Cir. 2005) (holding that the arbitration clause was narrow because it limited the definition of "grievances" to violations of the agreement itself and lacked additional language found in broad clauses, such as "relating to").

Here, the arbitration clause found in Section 17 states, in pertinent part, "Disagreements between the parties regarding any of the terms of this Agreement shall be submitted to arbitration pursuant to the American Arbitration Association Rules for Commercial Arbitration." Based on a plain reading of Section 17, even in the context of the entire distributorship agreement, it is reasonable to conclude that the word "terms" is synonymous with "provisions" of the contract, and neither party has provided support to the contrary. Furthermore, the language "any of the terms" implies a broad construction of what "terms" is meant to include. The determinative issue, however, is not the interpretation of "terms," but the meaning of "regarding." It is reasonable to conclude that the general term "regarding" is sufficiently similar to "relating to," thus making it similar to the language in *Fleet* and *Marathon Ashland Petroleum*, so as to render this arbitration clause broad in scope. *See, e.g., ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 33-34 (2d Cir. 2002) (stating that an arbitration clause containing "the general phrase 'with respect to'" is broad in scope); *Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075, 1080 (9th Cir. 2002) (holding an arbitration clause containing the terms "concerning" and "regarding" to be reasonably

broad in scope); *Neppel v. Signature Flight Support Corp.*, 234 F. Supp. 2d 1016, 1025 n.13 (D. Minn. 2002) (describing the language "any dispute . . . concerning . . . the terms of this Agreement" as broad in scope); *Kansas City Power & Light Co. v. Local No. 1464, Int'l Bhd. of Elec. Workers*, 506 F. Supp. 1151, 1155 (W.D. Mo. 1981) (stating that an arbitration provision requiring arbitration of a dispute "regarding interpretation or application of any provision of th[e] Agreement" was obviously quite broad). Section 17 does not limit arbitration only to disputes arising out of or under the agreement. Instead, it provides for arbitration even of disputes "regarding" (i.e. relating to or concerning) any terms of the agreement. Therefore, this Court concludes as a matter of law that the arbitration clause in Section 17 is broad in scope.

After determining an arbitration clause to be broad, a court must then analyze whether the plaintiff's claims relate to the subject of the agreement. *Fleet*, 118 F.3d at 621. If the claim does relate to the subject matter of the agreement, then the court must leave the claim for arbitration. *Id.*; *Lebanon Chem. Corp.*, 179 F.3d at 1101. Respondents' claims amount to disputes regarding interpretation or application of a provision of the contract. For example, in Count 4 of the verified complaint, Respondents admit that their claim under the Arkansas Franchise Practices Act is premised on alleged reliance on the distributorship agreement remaining unchanged at least during the initial term. Similarly, Respondents' claims for a declaratory judgment; breach of the distributorship agreement and the implied covenant of good faith and fair dealing; tortious interference with business expectancies; violation of the Arkansas Deceptive Trade Practices Act and common law deceptive practices; promissory estoppel; and unjust enrichment and recoupment all are essentially disputes regarding interpretation or application of provisions or terms of the distributorship agreement. Because Respondents' claims are all essentially regarding the

distributorship agreement, and because Section 17 requires that disputes regarding any terms of the contract be submitted to arbitration, Cold Water's claims must be submitted to arbitration.

The Court must next consider whether the entire proceedings should be stayed pending arbitration of the disputes between Cold Water and Ice House. In *Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382 (8th Cir. 1983), the court stated that it "makes eminent sense" to stay proceedings involving third parties to an arbitration agreement "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement." 713 F.2d at 387. Even where the third party litigant is not a party to the arbitration agreement, a court has the discretion to stay proceedings on the nonarbitrable claims under its inherent power to control its docket, conserve judicial resources, and provide a just determination of the third party litigation before it. *Id.* (citing *Am. Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) (staying litigation pending arbitration because questions of fact common to all the actions were likely to be settled during the arbitration)). Expansion of the stay to encompass the nonarbitrable claims is appropriate if the arbitrable claims predominate, there is a risk of inconsistent results, or arbitration may affect the outcome of the nonarbitrable claims. *ABC Bus Leasing, Inc. v. Traveling in Style (TIS) Inc.*, No. 06-4819, 2007 WL 2768292, at *12 (D. Minn. Sept. 18, 2007) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987)).

In *Contracting Northwest, Inc.*, the city of Fredericksburg had no arbitration agreement with the subcontractor or insurance company. *Contracting Northwest, Inc.*, 713 F.2d at 386. Nevertheless, the Eighth Circuit held that the district court properly stayed the city's litigation against the subcontractor and insurance company where the issues necessary to resolve the dispute between the city and the contractor fell within the scope of the arbitration agreement, and where the

disputes involved common questions of law and fact. *Id.* at 386-87. In *City of Bismark v. Toltz, King, Duvall, Anderson and Associates, Inc.*, the city of Bismark brought an action against a construction company, an engineer, and a bonding company, but only its dispute with the construction company was arbitrable. 767 F.2d 429, 432 (8th Cir. 1985). In that case, the Eighth Circuit held that the district court did not abuse its discretion in staying the entire proceedings pending arbitration between the city and the construction company in order to preserve judicial economy and avoid the risk of possible inconsistent results. *Id.* In *ABC Bus Leasing, Inc. v. Traveling in Style (TIS) Inc.*, the district court stayed the litigation proceedings of nonarbitrable claims of third parties where it determined that the arbitrator's ruling would necessarily impact the results of that litigation. 2007 WL 2768292, at *12.

Although Perry and Best Ice are not parties to the distributorship agreement, their disputes with Ice House regard the same questions of law and fact as Cold Water's dispute with Ice House. Common questions of fact exist among all claims between Respondents and Petitioner, and those common questions of fact are within the scope of the arbitration agreement. Arbitration between Cold Water and Ice House may resolve the disputes involving Perry and Best Ice, and the arbitrator's ruling would almost certainly impact the outcome of litigation between Perry, Best Ice, and Ice House, meaning that judicial resources would be best conserved by staying the entire action. Therefore, the Court will stay the entirety of these proceedings pending the results of arbitration in Duval County, Florida.

## CONCLUSION

This Court has the authority and jurisdiction to determine whether the disputes in this case are arbitrable. The disputes between Cold Water and Ice House are arbitrable in Duval County,

Florida.  The disputes of Perry and Best Ice have questions of law or fact in common with the dispute between Cold Water and Ice House, and arbitration of the dispute between Cold Water and Ice House will impact the result of litigation between Perry, Best Ice, and Ice House.  Finally, Ice House is not estopped from pursuing arbitration in its dispute with Cold Water.  For these reasons, Defendant's motion to stay pending arbitration is GRANTED.  Document #6.

   IT IS SO ORDERED this 12th day of September, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE